Next case for argument is Bordelon v. Board of Education. Ms. Blanchard. Good morning, Your Honors. My name is Terry Blanchard, and I'm representing the appellant. In this case, Your Honor, we believe the District Court erred in granting defendants' motion for summary judgment because it determined factual issues that it should have allowed a jury to determine. In Title VII cases, summary judgment is frequently inappropriate because the factual issues are often presented by circumstantial evidence. Courts have to be careful not to invade the fact-finder's province in resolving credibility disputes. In this case, the District Court took it upon itself to determine that Judith Coates' comments that it was time for Bordelon to give it up was not indicative of age-based bias. However, the court in Shager v. Upjohn, when considering similar statements, those statements being, these older people don't like or care much for us baby boomers, but they can't do anything about it, and the old guys know how to get around things. Why is the Board of Education the defendant rather than the local school council? Wasn't it the local school council that made the decision? It is, the local school council did make the decision, but the board, Your Honor, precipitated these acts. And how they did that was they had Judith Coates, who was plaintiff's supervisor, kind of step in and influence the board to act in an age-based manner. So we believe under the cat's paw theory that the board had liability. She, meaning Judith Coates, had threatened the local school council that if they did not terminate Bordelon, that they would lose their power. And under the state statute, they could do that. So because Judith Coates was acting as an agent of the board, influencing the LSC, we believe the board has liability. How could the board cause the local school council to lose their position? Under the state statute 105-IL-CS-5-24-8.3, the board has the power to order new elections and replace the LSC. So when Judith Coates threatened... Unlimited? There isn't anything that has to happen for them to have that power? Well, if the school is on probation and certain things happen, they can order that the LSC be replaced. The school has to be on probation. Right, right. And so this was the threat that Judith Coates made. The school was on probation at the time. The school was on probation. That's my question. Okay. In Shaker v. Upjohn, the court stated that the task of disambiguating ambiguous utterances is for trial and not for summary judgment. Courts have also found that stating or inferring that someone should retire can be circumstantial evidence of age discrimination. Plaintiff also has additional circumstantial evidence of discrimination that the jury should have been allowed to consider in this case. One is the suspicious timing of Coates' actions. Coates' statement that it was time for Bordelon to give it up was made just weeks before the LSC voted not to renew plaintiff's contract. Coates herself removed Bordelon from his position at Kosminski just weeks before the LSC vote, which had the effect of silencing Bordelon and implying that he had done something wrong without him even being told why he was being removed. I'm sorry. Is this done under the same power? They're on probation so she could do that? Yes. Exactly. That's what I was referring to earlier. Now, was he 63 when he was terminated? Yes. Well, wasn't he replaced by a 63-year-old? Very temporarily. For only a matter of weeks, they had a replacement of that age. And then there was a different replacement. How old was the permanent replacement? I'm not sure how old the permanent replacement was. Okay. Courts have held that statements by someone other than the decision-maker may be probative if the individual has significant influence over the LSC. In this case, we know Coates has significant influence over the LSC, and we know this because LSC member Donald Everhart said that the LSC seriously considered Coates' statement that it was time for Bordelon to give it up. LSC member Chantel Allen believed Coates when she lied, and she told the LSC that Bordelon's son had misappropriated money from the school. We can also see Coates' influence in that LSC member Chantel Allen was concerned, and this is what I referred to earlier, when Coates told her that the LSC would lose their power if Bordelon was not removed. But most significantly, we can see Coates' influence over the LSC when Allen agrees to stand with Coates in removing Bordelon. And if that is not significant influence, I don't know what is. We also see evidence of Coates' age-based bias in how she treated older principals. We have Tawana Saunders' testimony that Coates would pick on the principals who were over 60. Coates would call Bordelon a moron to her staff, that when Clarice Berry, the president of the Principals and Administrators Association, saw Coates' treatment of another older principal, she recommended Coates' termination. Coates also made the statement that another older principal, Mary Rogers, was too old to run her school, that she was always sick and could barely see. These statements would allow a jury to infer that Coates possessed age-based bias. We have evidence that Coates was the proximate cause of the LSC's actions. Prior to Coates' influence over the LSC, the board had never even given Bordelon a negative evaluation. The LSC only moved to renew Bordelon's contract after Coates secretly met with the LSC to speak negatively about him, only after Coates lied to the LSC about Bordelon and his son misappropriating money from the school, only after she told the LSC that it was time for Bordelon to give it up, and only after she had asked Allen to stand with her in ousting Bordelon. Now the board says no proximate cause because the LSC had made age-based comments prior to Coates' coming. However, what if a group of decision makers were accustomed to making racially charged comments when alone, but when someone with more influence and experience joins them and lets them know that's not only okay, but you can even make your employment decisions based on your racially charged comments, we could say that that person with more influence was the proximate cause of that group's decision. A jury should be allowed to make that call. A jury should be allowed to hear this evidence. Importantly, despite the LSC's previous age-based comments, they had never removed Bordelon, never, ever given him a negative evaluation prior to Coates. In no minutes produced by the board is there any negative statements about Bordelon prior to Coates. A jury can infer that Coates and her lies to the LSC, her statement to the LSC that it was time for Bordelon to give it up, her prodding of the LSC that they should stand with her in ousting Bordelon were the actual proximate cause. But the district judge listed six legitimate grounds for dissatisfaction with Bordelon's performance. And he said that the efforts of Bordelon to defend against these six were very weak. Those were six reasons that the board had. Those were not the reasons that the LSC had. So the board is trying to... But if Coates is the board's representative influencing the local school council, why wouldn't that be another way of saying that those six criticisms were determinative of his losing his job? Because they don't cite those reasons for why they made the decision. For all of these reasons, summary judgment should be reversed, and this matter should be allowed to proceed to trial. Okay. Thank you, Ms. Blanchard. Mr. Lowder? Ms. Lowder, sorry. Your Honor, counsel, may it please the court, in fact, the LSC did list those answers. The written reasons that they didn't renew his contract. They said that the academics was bad, that the discipline in the school was out of control. They listed the very same reasons that the district court said in their written reasons not to renew his contract. The reason his comment that it's time for him to give it up is not suspicious timing is because Ms. Coates had been making the same... ...that student performance was an issue at the school. So back in April of 2010, she asked the LSC to designate two people to meet with her. They designated Allen and Everhart. She told Allen and Everhart, your school's in trouble. You're on probation for the first year. Mr. Bordelon is not cooperating with me. He's unwilling to cooperate. Your school's in trouble. She said that in April. In September, when the ISAT scores came in, the Illinois Standards Achievement scores came in, they were bad. They were bad across the board, 6% drop in the math scores, static in exceeding expectations. The students who were exceeding expectations, that was static. So she told them again, the LSC, your school's in trouble. You might be replaced because that's what the statute allows. The statute says if you're on probation more than one year, then the first option for the board is to call for new LSC elections. The second option is to replace the principal. So that's September. Then in December, the board makes a decision and places Ms. Ski on probation for a second year. So Ms. Coates says again to the LSC, now you're still in trouble, right? And not only are your test scores bad, but we look at performance points to see if you're going to get off probation. And whereas in 2008, you had 50% of the points you need, now you've only got 20% of the points you need. So you're unlikely to get off probation. I just want to go now to the cat's paw theory. So they're saying it's suspicious timing that she removed Bordelon a month before it was time for the LSC vote. Well, the reason that's not suspicious timing is because she couldn't get a hold of Bordelon. Ms. Coates was trying to e-mail him, and he said she didn't get his e-mails. He said she didn't get her e-mails. And also, she asked for an investigation into that, and she asked for a financial audit, and the financial editors couldn't get a hold of the information from the school. They couldn't access Kosminski's financial information online. So she asked for an investigation. And the attorney who decided to remove Bordelon said the reason he did that was so that those investigators could have unimpeded access to the school. And, in fact, when they went into the school, they found that three of the computers at the school had been disconnected from the domain of the board. So it wasn't suspicious timing. It was of Bordelon's own making that he was removed because he wasn't allowing the board's investigators to have access to the financial information. As far as Ms. Allen, Ms. Coates asking her to stand by her, she asked that right before she removed Mr. Bordelon from the school, and she said the reason she asked was that she asked her to stand by her to make sure that there wasn't chaos in the school or disruption so that there wouldn't be a disruption to the education. She didn't ask her to stand by her to remove him. That's not what she said. She said stand by me so that there won't be chaos in the school when he's removed. Because there isn't any circumstantial evidence of age discrimination in this case, I ask you to affirm the award of summary judgment to the board. Okay. Thank you, Ms. Lowder. Ms. Blanchard, anything further? Just a few points, Your Honors. Sure. We presented evidence that Bordelon's school, there were actually indicators that it wasn't performing as badly as Coates was suggesting. He had been noted for his performance earlier as being a spotlight school, and that was before Coates came. So the indicator is that after Coates came, then suddenly the school is in bad shape. The LSC had a list of reasons that were given after the decision was made as to why they acted the way they did in not renewing Bordelon's contract. Those decisions were different than the decisions that the board itself had made. But there is no documentation that any of these concerns that the LSC had that was given about a month after they voted not to remove his contract were ever issues before Coates came. A jury could infer that all of her actions combined influenced the LSC to make this decision. Maybe a jury, after hearing all of this evidence, will agree that age discrimination was not involved in the LSC's decision not to renew Bordelon's contract. However, the LSC decision itself shows that this is a very close case that should go to a jury. In this case, the LSC vote was three to keep him, three to get rid of him, and three abstentions. This very vote, Your Honors, show that this case is not easy. It's complex, it's difficult, but a jury should be allowed to make this decision. Thank you. Thank you very much, Ms. Blanchard and Ms. Lowder.